25CA0719 Marriage of Scott 07-23-2026

COLORADO COURT OF APPEALS

Court of Appeals No. 25CA0719
El Paso County District Court No. 17DR2901
Honorable Dennis McGuire, Judge

In re the Marriage of

Jordan Marc Scott,

Appellant,

and

Crystal Renee Richmond,

Appellee.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE KUHN
Freyre and Johnson, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 23, 2026

Jordan Marc Scott, Pro Se

No Appearance for Appellee

¶ 1     In this post-dissolution of marriage case involving Jordan Marc Scott (father) and Crystal Renee Richmond (mother), father appeals the district court's order adopting the magistrate's judgment finding him in contempt and imposing punitive and remedial sanctions.  We affirm.

## I.     Background

¶ 2     In 2018, the parties' marriage ended.  The district court incorporated into the decree of dissolution of marriage their parenting plan, which provided for equal parenting time and joint decision-making responsibility for their two children.  The court also set father's child support obligation.

¶ 3     About a year later, mother moved for abduction prevention measures under section 14-13.5-108, C.R.S. 2025, or, in the alternative, "protective orders."  She alleged, among other things, that she had just learned from the children that father planned to take them out of state during his next scheduled parenting time.

¶ 4     In November 2019, the district court, without a hearing, denied mother's section 14-13.5-108 request for abduction prevention measures, finding that father was not at risk of abducting the children.  But after noting the parties'

"extraordinarily high [level] [of] conflict" — and aiming to reduce it while "add[ing] stability to the children's lives" — the court entered "additional orders":

> If either party desires to transport the children out-of-state during their parenting time, at least [thirty] days' notice of such intent shall be provided to the other parent together with a complete itinerary of any such planned travel. If travel plans change, notice of such changes shall be communicated to the other parent as soon as such changes are known.

No party appealed that order.

¶ 5 In January 2021, the district court granted mother's motion to modify parental responsibilities, naming her the children's primary parent and sole decision-maker. However, the court also ordered that, for any major decision, mother must consult with father. If they disagreed, mother had the tie-breaking vote.

¶ 6 The district court also reiterated the travel itinerary requirement from the November 2019 order:

> All prior orders regarding travel or overnights remain in full force and effect so long as they do not contradict an order set out in this [o]rder. This includes the [c]ourt's prior [o]rder that if the children will be absent more than one overnight from a parent's ordinary home address, the other parent will be notified as soon as such absence is planned or known.

> Implicitly this means not just telling the other parent the children will be (address), with whom (names) and phone number of those caring for the children overnight.

¶ 7 Father appealed the January 2021 order but did not seek review of the above provision. A division of this court affirmed the order. *See In re Marriage of Scott,* (Colo. App. No. 21CA0258, Nov. 4, 2021) (not published pursuant to C.A.R. 35(e)).

¶ 8 In February 2022, in resolving mother's motion to modify child support, the district court referenced its prior orders that the parties split the out of pocket extraordinary medical expenses for the children in relation to their income. The court then clarified the prior orders, explaining that "[mother] will provide a copy of the medical bill to [father] within [thirty] days of making the payment" and that [he] then has "[thirty] days to reimburse her for at least one-half of the uninsured medical expenses." The court found that father seemed to be finding almost any reason to avoid paying his one-half share of the expenses and ordered that mother was not required to provide an explanation of benefits.

¶ 9 About two years later, mother moved for indirect contempt, asserting that father failed to comply with

- the January 2021 order by not providing her with travel itineraries on six separate occasions; and

- the February 2022 order by not paying one-half of the children's extraordinary medical expenses. Following a hearing in December 2024, the magistrate issued an order on January 2025. The magistrate found father in contempt for willfully violating the January 2021 order and imposed a punitive sanction of ninety-six hours in the county jail. The court also found him in contempt for not complying with the February 2022 order and imposed a remedial sanction that required him to reimburse mother $5,843.11 to purge the contempt.

¶ 10 Father then petitioned for review. The district court modified the magistrate's remedial sanction to $5,016.84 with interest but otherwise adopted the judgment.

## II. Analysis

¶ 11 Father contends that the district court erred because (1) the magistrate violated his due process rights and was biased against him; (2) the travel itinerary requirement of the January 2021 order is unlawful because it stems from the court's erroneous abduction

4

prevention measures from its November 2019 order; (3) the magistrate should have considered the children's best interests before imposing a ninety-six-hour jail sentence during his upcoming Christmas parenting time at the December 2024 hearing; and (4) the remedial sanction at $5,016.84 for his unpaid share of the children's extraordinary medical expenses in the February 2022 order didn't account for a statutory offset.

### A.      Applicable Law and Standard of Review

¶ 12      C.R.C.P. 107 distinguishes between "two types of contempt — direct and indirect — and two types of sanctions — remedial and punitive." *In re Parental Responsibilities Concerning A.C.B.*, 2022 COA 3, ¶ 21.  Indirect contempt occurs "out of the direct sight or hearing of the court."  C.R.C.P. 107(a)(3); *see A.C.B.*, ¶ 22.  This case involves indirect contempt and both types of sanctions.

¶ 13      Punitive sanctions for indirect contempt are designed to punish "by unconditional fine, fixed sentence of imprisonment, or both, . . . conduct that is found to be offensive to the authority and dignity of the court."  C.R.C.P. 107(a)(4).  Such sanctions must be supported by proof beyond a reasonable doubt that (1) a lawful order existed; (2) the contemnor had knowledge of the order; (3) the

contemnor had the ability to comply with the order; and (4) the contemnor willfully refused to comply with the order. *In re Marriage of Sheehan*, 2022 COA 29, ¶ 25. The court must also expressly find the contemnor's conduct offensive to the authority and dignity of the court. C.R.C.P. 107(d)(1).

¶ 14 In contrast, remedial sanctions for indirect contempt are "imposed to force compliance with a lawful order or to compel performance of an act within the person's power or present ability to perform." C.R.C.P. 107(a)(5). To impose such sanctions, the court must find by a preponderance of the evidence that "the contemnor (1) failed to comply with a lawful court order; (2) knew of the order; and (3) has the present ability to comply with the order." *A.C.B.*, ¶ 24. The court must also "describ[e] the means by which the person may purge the contempt." C.R.C.P. 107(d)(2).

¶ 15 A magistrate has broad discretion in deciding whether a person is in contempt, and that finding will not be disturbed on appeal absent a showing of an abuse of discretion. *See People in Interest of K.S-E.*, 2021 COA 93, ¶ 18. An abuse of discretion occurs when the magistrate misconstrues or misapplies the law or

6

acts in a manifestly arbitrary, unreasonable, or unfair manner. *Sheehan*, ¶ 23.

¶ 16   Our review of a district court's order adopting a magistrate's decision is effectively a second layer of appellate review, and we must accept a magistrate's factual findings unless they are clearly erroneous. *In re Marriage of Carey*, 2026 COA 3, ¶ 29; C.R.M. 7(j). Factual findings are clearly erroneous only if there is no record support for them. *See In re Marriage of Thorburn*, 2022 COA 80, ¶ 25. We review de novo the district court's and magistrate's legal conclusions. *Carey*, ¶ 29.

## B.   Judicial Bias

¶ 17   To begin, father contends that the magistrate's bias against him deprived him of due process. He points to a statement the magistrate made during a May 5, 2025, hearing, which took place after he had already filed his notice of appeal on April 22, 2025. Because we are limited to the record that was before the district court, we will not consider this issue. *See In re Marriage of Rivera*, 91 P.3d 464, 466 (Colo. App. 2004).

¶ 18   Next, we reject father's argument that the magistrate's alleged unfavorable evidentiary rulings against him during the contempt

7

hearing demonstrate bias. But unfavorable evidentiary rulings alone are not enough to demonstrate bias. *In re Marriage of Hatton*, 160 P.3d 326, 330 (Colo. App. 2007) ("Adverse rulings, standing alone, do not constitute grounds for claiming bias or prejudice."); *see People v. Schupper*, 124 P.3d 856, 859 (Colo. App. 2005) (noting that the propriety of a district court's rulings, whether right or wrong, is not relevant in determining recusal issues and do not alone indicate partiality), *aff'd*, 157 P.3d 516 (Colo. 2007).

## C. January 2021 Order — Travel Itinerary Requirement

¶ 19 Father challenges the magistrate's contempt finding. Specifically, he says that the travel itinerary requirement of the January 2021 order — which the January 2025 order found father had violated — is unlawful, as that requirement stems from the district court's erroneous abduction prevention measures in its November 2019 order. We disagree.

¶ 20 A district court may impose abduction prevention measures in a child-custody proceeding if it finds that the evidence establishes a "credible risk of abduction of the child." § 14-13.5-104(1), C.R.S. 2025. In determining whether there is a credible risk of abduction, the district court must consider various risk factors set forth in the

Uniform Child Abduction Prevention Act. *See*

§ 14-13.5-107(1)(a)-(m). If, after considering the statutory factors,

the district court finds that there is a credible risk of abduction, it

"shall enter an abduction prevention order." § 14-13.5-108(2); *see*

*also In re Marriage of Badawiyeh*, 2023 COA 4, ¶¶ 17, 21 (reversing

the imposition of abduction prevention measures under the

Uniform Child Abduction Prevention Act when the district court did

not make a specific finding that the father posed a credible risk of

abducting the children).

¶ 21    To start, father did not timely appeal the travel itinerary

requirement provision. *See In re Marriage of Scott,* (Colo. App. No.

23CA1432, Nov. 21, 2024) (not published pursuant to C.A.R. 35(e))

(dismissing father's appeal of the November 2019 order as

untimely); *In re Marriage of Scott,* (Colo. App. No. 25CA0492, Dec.

11, 2025) (not published pursuant to C.A.R. 35(e)) (rejecting father's

jurisdictional challenge to the travel itinerary requirement

provision).

¶ 22    Nevertheless, in its November 2019 order, the district court

declined to impose abduction prevention measures. But mother

also sought "protective" relief in addition to the abduction

prevention measures.  And the court then entered a travel itinerary requirement that applied to both parties.  It explained that the parties' extraordinarily high level of conflict was affecting the children and that the requirement would reduce future disputes.  So, contrary to father's argument, the court did not impose abduction prevention measures but instead entered an order in the children's best interests, a decision well within its discretion.  *See In re Marriage of Finer*, 920 P.2d 325, 332 (Colo. App. 1996) ("The [district] court can enter orders in the best interest of the child[ren]."); *see also In re Marriage of Zebedee*, 778 P.2d 694, 699 (Colo. App. 1988) (concluding a district court may impose reasonable conditions on a party's parenting time if it finds that doing so is in the child's best interests); *In re Marriage of Hunt*, 870 P.2d 720, 724-26 (Mont. 1994) (no abuse of discretion in requiring the noncustodial father to give the custodial mother his itinerary and whereabouts during his visitation with the children).

¶ 23     Because the November 2019 order was within the district court's discretion — and was therefore lawful — the magistrate did not err in this regard.  *See K.S-E.,* ¶ 18.  And given our disposition, we need not address father's argument that the magistrate

prohibited him from asserting the defense that he had no duty to comply with the underlying order because it was "void under *Badawiyeh*."

¶ 24    Father also asserts that the district court's contempt finding cannot stand because the November 2019 order violates his fundamental rights under *Troxel v. Granville*, 530 U.S. 57 (2000). But he did not raise, and the district court did not address, this constitutional issue. Because his argument is not preserved for appellate review, we decline to address it. *See People in Interest of K.L-P.*, 148 P.3d 402, 403 (Colo. App. 2006) ("[A] party seeking review of a magistrate's decision must raise a particular issue in the district court so that the district court may have an opportunity to correct any error that may have been made by the magistrate."); *see also* C.R.M. 7(h) ("Any petition for review shall state with particularity the alleged errors in the magistrate's order or judgment . . . .").

¶ 25    Finally, father argues that the magistrate violated his due process rights by excluding as hearsay his sworn affidavit "challenging the lawfulness of the underlying orders." But he does not explain why that ruling was wrong. He does not identify an

11

exception to the hearsay rule, let alone show that the affidavit should have been admitted.  Instead, he simply says that the affidavit was "proper evidence in motion practice" under C.R.C.P. 43(e) and "directly relevant."  We decline to address this undeveloped argument.  *See In re Marriage of Zander*, 2019 COA 149, ¶ 27 (refusing to consider an argument not supported by legal authority or any meaningful legal analysis), *aff'd*, 2021 CO 12; *see also Vallagio at Inverness Residential Condo. Ass'n v. Metro. Homes, Inc.*, 2017 CO 69, ¶ 40 (noting we will "decline to assume the mantle" when parties offer no supporting arguments for their claims).

D.    December 2024 Hearing — Punitive Sanction

¶ 26    At the December 2024 hearing, the magistrate sentenced father to ninety-six hours in the county jail for his violation of the January 2021 order.  The magistrate ordered father to serve his sentence immediately, which resulted in father missing the Christmas holiday with the children.  Father contends that the magistrate should have considered the children's best interests before imposing a ninety-six-hour jail sentence during his upcoming Christmas parenting time.  However, he provides us with

no authority and, we are aware of none, that requires a court to weigh the impact of imprisonment on the contemnor's own parenting time. *See In re Marriage of Nussbeck*, 974 P.2d 493, 499 (Colo. 1999) ("Plainly and simply, a punitive contempt proceeding is a matter between the court and the offending party.").

¶ 27 Father also suggests that the ninety-six-hour jail sentence was "disproportionate to the circumstances." In support, he relies on *In re Marriage of Campbell*, 140 P.3d 320, 322 (Colo. App. 2006), and *Nussbeck* for the proposition that a district court must consider the reasonableness and proportionality of contempt sanctions. However, *Campbell* did not involve contempt, and *Nussbeck* does not address proportionality of contempt sanctions. And father does not tell us why the length of the sentence was unusually severe, particularly in light of his willful and persistent violations of the January 2021 order and the court's authority to impose a jail sentence of up to six months under these circumstances. *See* C.R.C.P. 107(d)(1).

¶ 28 Father claims that the magistrate erred in imposing the jail sentence because other sanctions were available, like scheduling the sentence around his parenting time, imposing fines, or ordering

13

community service. Given the magistrate's broad discretion and that the sanction fell within the range of reasonable options, we discern no error. *See* C.R.C.P. 107(a)(4); *K.S-E.*, ¶ 18; *see also Carey*, ¶ 32 ("In assessing whether a [district] court's decision is manifestly unreasonable, arbitrary, or unfair, we ask not whether we would have reached a different result but, rather, whether the [district] court's decision fell within a range of reasonable options." (quoting *E-470 Pub. Highway Auth. v. Revenig*, 140 P.3d 227, 230-31 (Colo. App. 2006))).

¶ 29 Moreover, the ninety-six-hour jail sentence was not a modification of parenting time as father insists. The sentence was a proper punitive sanction, and the magistrate had broad discretion to enforce the order through contempt, including jail time, when the party willfully refused to comply with the order. *See K.S-E.*, ¶ 18; *see also Kourlis v. Port*, 18 P.3d 770, 773 (Colo. App. 2000) ("[T]he authority to punish contempt is an exercise of a [district] court's inherent powers to enforce obedience to its orders."). The fact that the jail sentence affected his parenting time does not transform it into a modification; rather it reflects the consequence of his noncompliance.

E. February 2022 Order — Children's
Extraordinary Medical Expenses

1. Contempt Finding

¶ 30    Father does not dispute the magistrate's contempt finding as to the February 2022 order, and we therefore accept it as true. *See In re Marriage of O'Connor*, 2023 COA 35, ¶ 11.

2. Remedial Sanction

¶ 31    In determining the remedial sanction, the magistrate found that mother spent $10,820.58 on the children's extraordinary medical expenses from 2022 through 2024. Father contests that amount, asserting that the magistrate erred by including certain expenses.

¶ 32    Citing section 14-10-115(10)(c), C.R.S. 2025, father argues that the magistrate should have set aside the "mental health expenses" because "no necessity finding was ever made." Under that provision,

> [t]he amount to be added to the basic child support obligation shall be the actual amount of the total insurance premium that is attributable to the child who is the subject of the order. If this amount is not available or cannot be verified, the total cost of the premium should be divided by the total number of persons covered by the policy. The

15

cost per person derived from this calculation shall be multiplied by the number of children who are the subject of the order and who are covered under the policy. This amount shall be added to the basic child support obligation and shall be divided between the parents in proportion to their adjusted gross incomes.

¶ 33   Because father does not explain how that provision supports his claim, we decline to address the issue. *See Zander,* ¶ 27. For the same reason, we decline to address his one sentence assertion that the magistrate should have excluded "family/couples" therapy sessions as it was "definitely . . . not a specific-child only expense." *See id.*

¶ 34   Father also insists that the children's "second round of orthodontic braces" for each child totaling $7,850 should have been excluded from mother's claimed expenses because she failed to consult with him. The record, however, shows that she had sole decision-making responsibility, and although she had to consult with father, she ultimately had the final say. Further, the court previously found that he was looking for almost any reason to avoid paying his one-half share of the uninsured medical expenses and, therefore, ruled that she did not have to provide an explanation of benefits.

¶ 35    In all, we see no reason to disturb the magistrate's finding that mother spent $10,820.58 on the children's extraordinary medical expenses from 2022 through 2024.  *See Carey*, ¶ 29.

¶ 36    Still, father contends that the district court erred by setting the remedial sanction at $5,016.84 because the court failed to exclude the $250 in annual extraordinary medical expenses per child.  We conclude that any error is harmless.

¶ 37    Under section 14-10-115(10)(h)(I), C.R.S. 2024, "[a]ny extraordinary medical expenses incurred on behalf of the children shall be added to the basic child support obligation and shall be divided between the parties in proportion to their adjusted gross incomes."[1]  Extraordinary medical expenses are uninsured expenses, including deductibles and copayments, in excess of $250 per child per calendar year.  § 14-10-115(10)(h)(II); *see In re Marriage of Alvis*, 2019 COA 97, ¶ 15.  "Extraordinary medical expenses include[] . . . such reasonable costs as are reasonably necessary for . . . professional counseling or psychiatric therapy for behavioral or mental health disorders . . . . "  § 14-10-115(10)(h)(II).

---

[1] We cite the version of the statute in effect at the time of the court's ruling.

17

¶ 38    The parties have two children, and mother sought, as a remedial sanction, reimbursement for extraordinary medical expenses incurred over three years.  She indicated that she spent $10,820.58 and that father's share was $5,410.29, which with 8% interest, came to $5,843.11.  The magistrate imposed a remedial sanction against father in the amount of $5,843.11.

¶ 39    In his petition for review, father asserted that the remedial sanction amount should be reduced to account for the $250 annual per-child exclusion.  With two children over three years, that exclusion totaled $1,500.  In response, mother conceded that she had not subtracted the $250 per child per calendar year when calculating the remedial sanction.

¶ 40    On review, the district court began with mother's total extraordinary medical expenses for the children of $10,820.58.  The court then deducted $1,000, apparently to account for the $250 annual per-child exclusion for two years, leaving a balance of $9,820.58.  From there, it calculated father's one-half share at $4,910.29 plus interest.  The court instructed the parties to file an amended order for the magistrate to sign.  The magistrate's later

18

order included additional interest of $106.55, and the remedial sanction was lowered to $5,016.84.

¶ 41    Father is right that the remedial sanction of $5,016.84 is inaccurate.  The error comes from the district court not excluding $500 more in extraordinary medical expenses and the magistrate not properly calculating the statutory interest.

¶ 42    We accept mother's $10,820.58 in extraordinary medical expenses from 2022 through 2024.  Then, after subtracting $1,500, which represents the $250 exclusion for each child for three years, a balance of $9,320.58 remains.  Father's one-half share of that amount is $4,660.29.  However, although the magistrate ordered statutory interest to apply to the sanction, he only added $106.55 to the remedial sanction amount.  Statutory interest is 8% per year — which rises to 10% per year for child support arrearages and debts — compounded annually.  §§ 5-12-101, 14-14-106(1)(b), C.R.S. 2025.  Regardless of how statutory interest is applied to father's remedial sanction amount, it would have raised the amount that he owed by more than $1,000.

¶ 43    But we only reverse if the error affects a party's substantial rights.  *See* C.A.R. 35(c) ("The appellate court may disregard any

error or defect not affecting the substantial rights of the parties.").

An error affects a party's substantial rights "only if it can be said with fair assurance that the error substantially influenced the outcome of the case or impaired the basic fairness of the [proceeding] itself." *Stockdale v. Ellsworth*, 2017 CO 109, ¶ 32 (quoting *Laura A. Newman, LLC v. Roberts*, 2016 CO 9, ¶ 24). We conclude this error did not.

¶ 44 The district court ordered father to pay $5,016.84 instead of the amount including statutory interest that the magistrate should have used. The error inured to father's benefit, meaning that correcting it would *increase* his remedial sanction by more than $1,000. Thus, any error was harmless and does not require reversal. *See* C.A.R. 35(c).

### III. Disposition

¶ 45 The judgment is affirmed.

JUDGE FREYRE and JUDGE JOHNSON concur.